IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PITTSBURGH MAILERS UNION LOCAL 22, A SUBORDINATE UNION OF THE COMMUNICATION WORKERS OF AMERICA AFL-CIO, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>PG PUBLISHING CO., INC. d/b/a PITTSBURGH POST GAZETTE,<br><br>    Defendant. | 2:20-cv-222-NR |

## MEMORANDUM OPINION

This case concerns disputes between several unions and the Pittsburgh Post-Gazette. These disputes arose in November 2019, after the parties' collective bargaining agreements had expired. ECF 1, ¶¶ 15-18. The unions filed the present lawsuit, seeking to compel their disputes to arbitration. *See generally id.* They argue that even though the CBAs expired, the parties had, in effect, an implied-in-fact contract to arbitrate. ECF 24, pp. 9-10. In other words, the unions claim that the parties' conduct showed that they intended to continue the CBAs' arbitration clause even after the CBAs expired and as they sought to negotiate new CBAs. The Post-Gazette counters that no implied-in-fact contract exists because the Post-Gazette, in letters sent in January 2017, clearly disavowed the continued existence of an arbitration agreement.[1] ECF 27, pp. 10-12. Thus, the critical issue before the Court

---

[1] To be clear, each union received a separate letter, but all those letters were materially identical.

is whether this January 2017 letter constituted a clear disavowal of the arbitration agreement.

This Court considered this same issue in a related case in November 2019. *See Newspaper, Newsprint, Magazine & Film Delivery Drivers, Helpers & Handlers, Int'l Brotherhood of Teamsters, Local Union No. 211 v. PG Pub. Co., Inc.*, 425 F. Supp. 3d 421 (W.D. Pa. 2019) (Ranjan, J.). In that case, a different bargaining unit filed a similar lawsuit, seeking a preliminary injunction to compel the Post-Gazette to arbitrate. *Id.* at 424. This Court held that the January 2017 letter was not a clear disavowal of the arbitration agreement, found an implied-in-fact contract existed, and entered a preliminary injunction requiring the Post-Gazette to maintain the status quo. *Id.* at 429-31.

On appeal, however, the Third Circuit reversed. *See Newspaper, Newsprint, Magazine & Film Delivery Drivers, Helpers & Handlers, Int'l Brotherhood of Teamsters, Local Union No. 211 v. PG Pub. Co., Inc.*, 804 F. App'x 174 (3d Cir. 2020) ("Panel Decision"). In a non-precedential decision, two judges on the panel (Judges Greenaway and Matey) found that the January 2017 letter was, in fact, a clear disavowal; the third judge (Judge Schwartz) found the opposite, but joined the majority of the panel to reverse the injunction on other grounds. *See id.* at 178 n.4.

The Post-Gazette urges this Court to follow the Panel Decision, though it acknowledges that the Panel Decision is not precedential. ECF 30, p. 5 ("The Third Circuit's decision in the Teamsters Union's prior litigation, although not precedential,

sets forth the analysis demonstrating why the Unions cannot establish 'implied-in-fact contracts' in this case.").

After carefully considering the parties' arguments on cross-motions for summary judgment, the Court will enter judgment for the Post-Gazette and against the Unions.

Even though the Panel Decision is not precedential, it still operates no differently than a mandate here, as it concerns the very same issue and the very same letter as in this case.[2] While Judge Schwartz found the January 2017 letter to be unclear, two other judges on the panel found otherwise; this constitutes the majority of the Panel Decision for purposes of the issue now before this Court. Thus, this Court believes it is compelled to follow the Panel Decision. As a result, because the Third Circuit held that the January 2017 letter constitutes a clear disavowal of the arbitration agreement, no implied-in-fact agreement to arbitrate exists, and this Court therefore cannot compel the Post-Gazette to arbitrate the disputes with the unions.[3] An appropriate order follows.

---

[2] Although there are some minor differences between the record in this case and the previous one, particularly regarding conduct that occurred after the Post-Gazette sent the January 2017 letter, those differences are irrelevant because the Court now concludes that, consistent with the Panel Decision, the letter is a clear disavowal of the arbitration provision in the CBAs.

[3] This Court continues to believe that the January 2017 letter is unclear, for the reasons stated by Judge Schwartz. *See Newspaper*, 804 F. App'x at 178 n.4.

Additionally, as this Court noted during oral argument, the Court has some concerns that the Panel Decision may have created some confusion for district courts in analyzing whether an implied-in-fact arbitration agreement exists following the expiration of a CBA. ECF 32, 16:15-18:8, 19:15-20:14. The Panel Decision essentially

interpreted the January 2017 letter like a contract—it parsed the words and determined that it was unambiguous, and therefore clear. *See Newspaper*, 804 F. App'x at 179-82. But the letter is not a contract. And an implied-in-fact contract is usually discerned from the conduct (words and actions) of the parties, not from a contractual interpretation of a letter, as the Third Circuit held in *Luden's Inc. v. Local Union No. 6 of Bakery, Confectionary & Tobacco Workers' Int'l Union of Am.*, 28 F.3d 347 (3d Cir. 1994). *See Luden's*, 28 F.3d at 355-56 ("Thus general principles of contract law teach us that when a contract lapses but the parties to the contract continue to act as if they are performing under a contract, the material terms of the prior contract will survive intact unless either one of the parties clearly and manifestly indicates, through words or through conduct, that it no longer wishes to continue to be bound thereby, or both parties mutually intend that the terms not survive.").

The Panel Decision found that the letter was unambiguous as a matter of contract, and that it didn't matter whether it could have been phrased in a clearer manner. *See Newspaper*, 804 F. App'x at 182 ("[W]hether the Post-Gazette could have chosen better words—as the Union suggests—is not the standard here. We are only tasked with asking if the Letter was ambiguous, and as explained, we find that it was not."). But *Luden's* appears to demand a more exacting standard, with any doubts resolved in favor of arbitration. 28 F.3d at 359 ("[T]o effectuate the federal labor policy of favoring the resolution of employee grievances by a method agreed upon by the parties, the Supreme Court has established a strong presumption favoring arbitrability of disputes between parties who include arbitration provisions in their CBAs.") (cleaned up). This is because arbitration agreements are separable agreements, and it is rare for parties to reject the familiar, inexpensive, and speedy dispute-resolution process that arbitration affords, even when a CBA expires. *See id.* at 356 ("In the present context of labor arbitration clauses, for example, we think that a party's termination of a CBA generally does not signify that the party wishes to abandon arbitration in the future, for the parties' interest in obtaining a prompt and inexpensive resolution of their disputes by an expert tribunal … does not dissipate the moment the contract lapses.") (cleaned up).

If viewed against this backdrop, the Post-Gazette could have phrased the January 2017 letter in a clearer way, by using precise language that conveyed that any obligations to arbitrate only extended to non-contractual obligations under law, or to disputes that arose before the expiration of or under the terms of the CBA. *See id.* at 361 ("Of course, repudiation would affect only future disputes arising after such notice, whenever it may come, and such a termination could certainly not affect disputes involving pre-expiration facts, accrued rights, or persisting rights (as measured with respect to the lapsed *or* the implied-in-fact CBA" (emphasis in original)). Indeed, the Third Circuit in *Luden's* even suggested such language. *Id.* at 356 (citing a letter with language that the employer intended to "revoke the parties'

DATED this 25th day of January, 2021.

BY THE COURT:

/s/ J. Nicholas Ranjan
United States District Judge

---

agreement as to the grievance procedures" as an example of sufficiently repudiating the arbitration provision) (citation omitted).  Instead, the Post-Gazette opaquely stated in the letter that "it will decide its obligation to arbitrate on a case-by-case basis" and then clarified in oral argument before the Third Circuit that what it meant was that it was only going to arbitrate disputes it was "legally obligated" to arbitrate. *See Newspaper*, 804 F. App'x at 180 n.7.  While there is no predetermined formulation that the Post-Gazette was required to use to satisfy the test in *Luden's*, the language and conduct from the Post-Gazette had to, at a minimum, make it **clear** to the unions that it no longer wished to arbitrate new disputes arising between the parties. *See Luden's*, 28 F.3d at 357 n.16 ("We cannot provide a recipe for conduct which suffices to preclude the formation or annul the existence of an implied-in-fact arbitration provision, and leave that question for later development."); *id.* at 360 ("Either party may renege on the [arbitration] term at any time by **clearly** disavowing" it) (emphasis added).

In short, it remains unclear whether the analysis that district courts should undertake should stem from a contractual-interpretive analysis—*i.e.*, are the words of the letter unambiguous like a contract?  *See Newspaper*, 804 F. App'x at 179-82.  Or, should the analysis be more demanding—that is, focusing on the presumption in favor of arbitration, such that words, conduct, and reasonable inferences should be construed as creating an implied-in-fact agreement to arbitrate, absent express language to the contrary that specifically states what is and isn't arbitrable.  *See Luden's*, 28 F.3d at 353-64.  As the Post-Gazette points out, employers struggle with these sorts of communications, navigating what they must state around what they cannot state.  ECF 32, 27:16-20 ("So *Luden's* coming collaterally from the side, the employer has to try to both—try to have a sufficient disavow[al] that it meets the point of *Luden's*, but at the same time the NLRB law said that a blanket disavow[al] of arbitration after expiration is impermissible.").

All of this is to say: if the unions appeal here, clarification from the Third Circuit may be helpful for lower courts in deciding similar issues, as well as for employers and unions in how best to act after expiration of a CBA.